IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DARIUS SANTWANN DIXON                                                              PLAINTIFF

v.                                  Civil No. 1:24-CV-01032-BAB

SHERIFF RICKY ROBERTS, Union County, Arkansas,                    DEFENDANT.

## MEMORANDUM AND ORDER

Plaintiff Darius Santwann Dixon, a prisoner,[1] filed the above-captioned civil rights action

pursuant to 42 U.S.C. § 1983, generally alleging that Sheriff Ricky Roberts failed to protect him

from an altercation involving UCDC inmates and that he was denied constitutionally adequate

medical care for the injuries he sustained during that altercation.  *See* (ECF No. 1).  Plaintiff

proceeds *pro se* and *in forma pauperis* ("IFP").  *See* (ECF No. 3).  All parties have consented to

the jurisdiction of the undersigned magistrate judge to conduct all proceedings in this case and for

the entry of judgment.  *See* (ECF No. 11).

This matter is currently before the Court on Defendant's Motion for Summary Judgment.

(ECF No. 18).  Plaintiff has filed his response.  (ECF No. 27).  The Defendant has not filed a

reply, and none is necessary.  This Motion is therefore ripe for the Court's consideration.  For

the reasons outlined below, Defendant's Motion for Summary Judgment is **GRANTED**, and this

matter is therefore **DISMISSED WITH PREJUDICE**.

---

[1] Plaintiff was an inmate at the Union County Detention Center ("UCDC") during the events giving
rise to his claims.  (ECF No. 1).  His current whereabouts are unknown.  *See* (ECF No. 33).

# I. BACKGROUND[2]

Plaintiff claims that on or about April 8, 2024, he was a federal detainee at the UCDC and was housed in the same unit as inmates being held on state charges when a fight broke out between inmates. (ECF No. 1). Plaintiff says that he was hit in the face with a lunch tray during this fight, impairing his vision and injuring his Achilles, but jail officials did not transport him to the hospital; rather, he was examined by a nurse on staff. (ECF No. 1). Plaintiff names Sheriff Roberts in his individual and official capacities as the sole defendant to this action, contending that Sheriff Roberts oversees the jail and did not keep the federal prisoners separate from the state prisoners, in violation of Arkansas jail standards. *Id.* Plaintiff requests a declarative judgment and money damages. *Id.*

Because Plaintiff was a prisoner at the time he initiated this action and the events giving rise to his claims concern the conditions of his imprisonment, his Complaint was subject to preservice review pursuant to 28 U.S.C. § 1915A(a). Upon that review, this Court ordered that the Complaint be served on the Defendant. (ECF No. 6). After Defendant filed an Answer, this Court ordered Defendant to either file a motion for summary judgment on the issue of whether Plaintiff properly exhausted his administrative remedies before initiating this matter in accordance with 42 U.S.C. § 1997e(a) by September 13, 2024, or promptly file a notice with the Court informing the parties that Defendant did not intend to rely on the defense of exhaustion at trial. (ECF No. 10). This Court also ordered that discovery be stayed pending the outcome of the exhaustion issue. *Id.*

---

[2] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of the Defendant's Motion for Summary Judgment.

On July 31, 2024, upon receipt of the signed consent of all parties, United States District Court Chief Judge Susan O. Hickey entered an Order of Reference, directing that in accordance with their consent, this matter is to remain assigned to the undersigned magistrate judge for all proceedings and for the entry of judgment.   (ECF No. 11).   Later, Defendant filed a notice saying he did not intend to pursue an exhaustion defense at trial.   (ECF No. 15).   This Court then entered an initial scheduling order governing discovery and directing that any motion for summary judgment on the merits be filed by February 13, 2025.   (ECF No. 16).

On February 13, 2025, Defendant filed a Motion for Summary Judgment, a memorandum, and a statement of facts, including eight exhibits, in support, arguing that Plaintiff's claims against Defendant Roberts in his individual capacity must be dismissed because Plaintiff has failed to assert any facts suggesting that Defendant Roberts was personally involved in any of the events giving rise to Plaintiff's claims and that Plaintiff has failed to establish a plausible claim that some unconstitutional Union County policy, unofficial custom, or failure to train caused the purported constitutional violations.   (ECF Nos. 18-20).   The next day, this Court ordered Plaintiff to respond to Defendant's motion by March 7, 2025, and provided instructions on how to respond. (ECF No. 21).

When Plaintiff did not respond within the timeframe provided, this Court ordered Plaintiff to show cause why this matter should not be dismissed for failure to prosecute and failure to comply with court orders.   (ECF No. 23).   The show cause response was due by April 3, 2025. *Id.*   On March 24, 2025, Plaintiff filed a motion for an extension of time to submit a response. (ECF No. 24).   The next day, this Court granted that motion and directed Plaintiff to submit a response to the Defendant's Motion for Summary Judgment by April 15, 2025, failing which this

matter would be subject to dismissal.  (ECF No. 25).  But Plaintiff did not submit a response by

the April 15, 2025, deadline.  In response, this Court ordered Plaintiff to show cause by May 12,

2025, why this matter should not be dismissed for failure to prosecute and failure to comply with

court orders.  (ECF No. 26).  On April 24, 2025, Plaintiff filed his response to Defendant's

Motion for Summary Judgment, asking to "continue on with everything," and arguing that even

though Sheriff Roberts did not physically harm him, as sheriff, he has the authority to set policy

in the jail.  (ECF No. 27).  Plaintiff's mail has since been returned as undeliverable, (ECF Nos.

28-29), and Plaintiff has not submitted any updated contact information with the Court.[3]

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury

to return a verdict for either party."  *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is material only when

its resolution would affect the outcome of a case.  *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the

---

[3] The Court Order granting Plaintiff's request to proceed IFP also directs him to submit updated
contact information to the court within thirty days of any such change.  *See* (ECF No. 3).
Plaintiff has failed to comply with that order here, as more than thirty days have elapsed since
Plaintiff's mail has been returned as undeliverable.  *See* (ECF No. 28).  Plaintiff's failure to
comply with this Order provides an independent basis for dismissal of this action.  *See* Fed. R.
Civ. P. 41(b) (the district court has discretion to dismiss an action for "failure to prosecute, or to
comply with the Federal Rules of Civil Procedure or any court order"); *Henderson v. Renaissance
Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008) (per curiam).  Because Defendant Roberts's
Motion for Summary Judgment is ripe, this Court nevertheless reaches the merits of Plaintiff's
claims.

record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).   In response, the non-moving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the Court views all the evidence and inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

### III. FACTS

The following facts are undisputed:[4] On April 6, 2024, Plaintiff was booked into the UCDC on several state criminal charges and a federal "hold." (ECF No. 20-2).   He was placed in A-pod along with inmates being held on state criminal charges. *See* (ECF No. 20-8).   On April 8, 2024, another inmate accused Plaintiff of "snitching" on him during a previous incarceration at the UCDC and invited Plaintiff to fight him. (ECF No. 20-8, p. 16).   While Plaintiff initially declined the invitation, this inmate then threatened to assault Plaintiff's uncle, who was also incarcerated at the UCDC at the time. *Id.*   Following this threat, Plaintiff engaged in a physical altercation with this inmate. *Id.* at 19.   Plaintiff fought the inmate once, but then the inmate wanted to continue to fight Plaintiff, and eventually the inmate's friends "jumped" him. *Id.* Although Plaintiff hit the panic button, no one responded to assist. *Id.*   After the inmate and his

---

[4] Plaintiff's response to Defendant's Motion for Summary Judgment was neither sworn under penalty of perjury nor notarized. (ECF No. 27).   Accordingly, the Court considers Plaintiff's response as argument and looks to Plaintiff's verified Complaint, (ECF No. 1), to determine whether any material fact disputes preclude summary judgment. *See Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994-95 (8th Cir. 2001) ("A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, [] and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint, 28 U.S.C. § 1746.") (internal citation omitted).

friends assaulted Plaintiff, they started fights with Plaintiff's uncle and cousin.  *Id.* at 22.  All of these fights were outside the view of UCDC surveillance cameras.  *Id.*  Plaintiff and his uncle then went into the dayroom area of A-pod, where there are surveillance cameras.  *Id.*

The surveillance video captures what happened next: Plaintiff, wearing a white tank top and a short-sleeved orange jumpsuit unsnapped from the waist up, enters the dayroom, speaks briefly with jail officials and then walks to the corner of the dayroom.  *See* (ECF No. 20-6 at 0:30). Plaintiff only has one sleeve of the jumpsuit on and is trying to maneuver his arm through the second sleeve.  *Id.*  Another inmate, wearing only white shorts and identified as Christian Cook, is shouting and pointing in the background, but not at Plaintiff.  *Id.* at 0:30-1:00.  Cook and Plaintiff are in opposite sides of the dayroom, where Cook continues to yell and gesture.  *Id.* at 1:00-1:20.  Cook walks up to Plaintiff and slaps him in the face, and then turns and walks away.[5] *Id.*  Plaintiff runs up behind Cook and swings at him from behind, but Cook ducks, and Plaintiff does not make contact with Cook.  *Id.*  During this altercation, it looks like one of the deputies tried to use a taser or some other non-lethal force against Plaintiff and Cook but was unsuccessful. *Id.*  A second corrections official, identified by Defendant as Sergeant Philips, then walks up between Plaintiff and Cook and separates them, at one point pulling Plaintiff to the ground to prevent him from getting closer to Cook.  *Id.* at 1:20-1:40; (ECF No. 20, p. 1).  Other officers, identified by Defendant as Deputy Steward and Deputy Rodgers, then assist in pulling Plaintiff away from Cook, while Cook and other inmates are locked into a cell.  *Id.*; (ECF No. 20, p. 1). Sergeant Phillips then escorts Plaintiff to a different cell.  *Id.*  Plaintiff sits down next to the cell

---

[5] It is unclear if Christian Cook is the same inmate who had earlier fought with Plaintiff and Plaintiff's uncle and cousin outside the view of the cameras.

and talks to the deputies. *Id.* at 1:30-4:00. Eventually, Deputy Steward collects Plaintiff's mattress and escorts him into the cell. *Id.* at 4:00-5:00.

That same day, Plaintiff's medical records reflect that medical staff treated him for "left leg pain due to altercation." (ECF No. 20-4, p. 2). Plaintiff described the medical complaint as "a constant throbbing pain." *Id.* The provider prescribed him ibuprofen for the pain and directed him to "apply cold compresses/ice packs for 20 minutes every 3 hours while awake for 24 hours." *Id.* at 4. On April 15, 2024, Plaintiff submitted a medical grievance saying he required an x-ray. (ECF No. 20-2 at 2-3). Nurse Sanford responded that same day saying that there was no order for an x-ray in his file, that medical staff was unable to request an x-ray (or any other testing) without an order from the provider, and that if he continued to experience problems with his leg, he needed to place a new "sick call." *Id.* On April 16, 2024, Nurse Sanford placed a patient note in Plaintiff's medical file explaining that she had provided this information to Plaintiff and that he was encouraged to place a "new sick call" if he experienced any other medical issues. (ECF No. 20-4 at 5).

On May 3, 2024, Plaintiff requested medical attention for his "leg and eyes." (ECF No. 20-3 at 1). The next day, medical responded saying that he was added to the "sick call list" and that an officer would escort him to nursing when nursing staff was available. *Id.* On May 4, 2024, Plaintiff was examined by TurnKey Health staff for "eye irritation" and educated on avoiding touching his eye. (ECF No. 20-4 at 6). That same day he was examined for "left ankle and calf" pain and directed to apply "cold compress/ice packs for 20 minutes every three hours while awake for 24 hours" on the affected areas and to rest and elevate his leg for 3 days. *Id.* at 7-8. On May 6, 2024, Plaintiff was examined again by medical professionals for "left ankle"

pain. (ECF No. 20-4 at 10).   Staff notes reflect that Plaintiff's left heel at Achilles was examined and that Plaintiff declined naproxen.  *Id.* at 12.   Those notes also indicate that medical staff provided the following education to Plaintiff: "[a]void stressing Achilles as [Plaintiff] might have partial tear but it isn't acute and does not need acute surgical consultation."  *Id.* at 12-13.

On May 19, 2024, UCDC medical staff placed a patient note in Plaintiff's medical file saying that Plaintiff was complaining at "pm pill pass" that nothing was being done about his leg pain and saying that he needed to go to the emergency room.  *Id.* at 14.   The note says that the medical staff advised him that he could not be transported to the emergency room without orders, that there were no such orders, and that needed to continue to submit "sick call" requests to obtain medical attention.  *Id.*

On May 24, 2024, Plaintiff was examined at the South Arkansas Regional Hospital and diagnosed with "Achilles tendinitis, left leg; contusion of thorax."  (ECF No. 20-4 at 17).   He was prescribed Naprosyn 500 mg twice daily for 10 days.  *Id.* at 17-19.   That same day, he was examined by UCDC medical staff for a "post off-site assessment" and instructed to request a "follow-up sick call if no improvement."  *Id.* at 20-22.   Plaintiff testified under oath at his deposition that he basically "had to lie and say something else was going on for [him] to make [his] way to the hospital to be seen."  (ECF No. 20-8 at 26).

UCDC policies and procedures provide that it is "the responsibility of any jailer assigned a pod control post to monitor and maintain control of access to and from the area assignment." (ECF No. 20-7 at 1).   Pursuant to those policies, "[a]ll pod doors are to remain locked at all times unless an inmate is authorized to enter or leave the location."  *Id.*   Federal inmates are subject to "standard guidelines," except to leave the facility, approval from the United States Marshal's

8

Office is required.  *Id.*  Further, UCDC policies provide that "[t]he nurse shall provide nursing care to inmate patients, promote and/or improve the overall health utilizing the nursing process in triage."  *Id.* at 3.  "The nurse assigned to the jail is under the direct supervision of the jail administrator."  *Id.*

## IV. ANALYSIS

Recall that Plaintiff asserts two claims for relief against Defendant Sheriff Ricky Roberts: (1) that his conditions of confinement violated his constitutional rights because he was housed with state inmates; and (2) he was not transported to the hospital for medical attention immediately following the physical altercation.  (ECF No. 1).  Plaintiff identifies Sheriff Roberts as a defendant in his individual and official capacities.  The Court starts with the individual capacity claims.

### A.    Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Parrish v. Ball*, 549 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Each government official, therefore, is only liable for his or her own misconduct, his or her title notwithstanding.  *Id.* (quoting *Ashcroft*, 556 U.S. at 677).  To this end, courts have held that supervising officials such as Sheriff Roberts "can be liable for an inferior officer's constitutional violation 'only if directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation."  *Id.* (quoting *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (internal citation omitted)).

Furthermore, "a supervising officer will not be individually liable for an otherwise

9

unlawful act if he is entitled to qualified immunity." *Id.* "Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, the plaintiff must show: '(1) the facts, viewed in the light most favorable to plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Id.* (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). In this case, Plaintiff's individual capacity claims against Sheriff Roberts do not pass step one.

There is no dispute that Defendant Roberts was not personally or directly involved in Plaintiff's medical care or the decisions about where he should be housed at the UCDC. *See* (ECF No. 20-8 at 25-28); *see also* (ECF No. 27). Accordingly, Defendant Roberts's alleged liability cannot be based on his *direct* participation in a purported constitutional violation. Rather, Plaintiff suggests that he is liable because of his role as sheriff. For Defendant Roberts to have violated Plaintiff's constitutional rights on a failure to "train or supervise" theory of liability, Plaintiff must show that Defendant Roberts:

1. Received notice of a pattern of unconstitutional acts committed by subordinates;

2. Demonstrated deliberate indifference to or tacit authorization of the offensive acts;

3. Failed to take sufficient remedial action; and

4. That such failure proximately caused injury to [Plaintiff].

*Id.* at 1002 (quoting *Jane Doe A v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir.

10

1990)).

But here, again, Plaintiff's individual capacity claim against Defendant Roberts does not get past the first element: there are no facts—disputed or otherwise—establishing that Defendant Roberts was aware of any of the circumstances giving rise to Plaintiff's claims, let alone that he was aware of a pattern of purportedly similar unconstitutional conduct committed by his subordinates.   Defendant Roberts, therefore, is entitled to qualified immunity on that basis alone.

That said, Plaintiff's claims fail for an even more basic reason: the undisputed material facts do not establish a violation of his constitutional rights.

### 1.  Failure to Protect

Plaintiff claims that UCDC officials failed to protect him from physical harm because they failed to separate the state inmates from the federal inmates.   (ECF No. 1).   As a threshold matter, to the extent that Plaintiff contends that UCDC jail officials violated some Arkansas jail standards, a violation of policy, by itself, is insufficient to establish a constitutional violation.   *See, e.g.,* *Christiansen v. Eral*, 52 F.4th 377, 379 (8th Cir. 2022) ("We've repeatedly explained that police department guidelines and policies do not create rights that give rise to a § 1983 action.") (citing *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)).

Rather, "a jail official violates the Due Process Clause of the Fourteenth Amendment, and may be liable under 42 U.S.C. § 1983, when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee."   *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013) (citation omitted).   "A failure-to-protect claim has two elements.   First, 'the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).   "Second, the inmate

must show that the official knew of and disregarded the risk to the inmate's safety." *Id.*

Here, Plaintiff does not claim that jail officials failed to protect him from Christian Cook, or any of the other inmates who were purportedly involved in physical altercations with Plaintiff on April 8, 2024. Instead, he claims that jail officials generally failed to protect him, a federal inmate, from the state inmates. (ECF No. 1). But he does not assert any facts—disputed or otherwise—establishing that simply being housed in the same pod as inmates being held on state charges creates a substantial risk of serious harm to him, an inmate being held on federal charges. And there are certainly no facts in the summary judgment record suggesting that jail officials were aware of *any* risk of substantial harm to Plaintiff that was somehow inherent to being housed with state inmates. Accordingly, Defendant Roberts is entitled to qualified immunity not only because it is undisputed that he was neither present, nor involved in, nor aware of the assault on Plaintiff on April 8, 2024, *see Edwards*, 750 F.3d at 733-34 (reversing denial of summary judgment against sheriff who was not present at the jail on the day of the assault on plaintiff), but also because the undisputed material facts do not establish that UCDC officials violated his constitutional rights merely by housing him with inmates being held on state criminal charges.

### 2. Failure to Provide Constitutionally Adequate Medical Care

With respect to Plaintiff's second claim, he asserts that he was not provided constitutionally adequate medical care after the April 8, 2024, assault because he was not transported to the hospital for medical care. (ECF No. 1 at p. 4).

Courts analyze medical claims brought by pretrial detainees and convicted inmates under the same "deliberate indifference" standard. *See Hott v. Hennepin Cty., Minn.*, 260 F.3d 901, 905 (8th Cir. 2001). This standard requires plaintiff to establish objective and subjective components.

*Jones v. Faulkner Cty., Ark.*, 131 F.4th 869, 874 (8th Cir. 2025) (quoting *Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013)). "'The objective component requires a plaintiff to demonstrate an objectively serious medical need,' while 'the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.* (quoting *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009)).

Even if Plaintiff's ankle and eye injuries from the April 8, 2024, assault qualify as an "objectively serious medical need," the undisputed facts in the summary judgment record show that jail officials did not deliberately disregard that need. Indeed, Plaintiff concedes that he was seen by the jail nurse immediately following the assault. (ECF No. 1 at p. 4). Plaintiff's jail medical records, moreover, show that he was examined by medical staff on the day of the assault, April 8, 2024, and several times in the days following the assault in response to Plaintiff's requests for medical attention. *See generally* (ECF No. 20-4). Rather, Plaintiff's chief complaint, it seems, is that he did not receive his preferred course of treatment—namely, to be seen by medical professionals at the local hospital. But "mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). After Plaintiff mischaracterized his medical conditions so that UCDC staff would transport him to the hospital to be examined, moreover, hospital staff treatment recommendations—a prescription for an anti-inflammatory pain medication, Naprosyn—was no different than the treatment he was receiving from UCDC medical staff. *Compare* (ECF No. 20-4, pp. 17-19), *with* (ECF No. 20-3 & ECF No. 20-4, pp. 1-16). These undisputed facts therefore fall short of establishing that the medical care Plaintiff received was "so inappropriate as to evidence intentional maltreatment." *See Jolly*, 205 F.3d at 1097 (quoting *Smith v. Jenkins*, 919

F.2d 90, 93 (8th Cir. 1990)).    Accordingly, Plaintiff has failed to establish that he received constitutionally deficient medical care following the April 8, 2024, assault, and Defendant Roberts is entitled to qualified immunity for this reason, as well.

### B.    Official Capacity Claims

This leaves Plaintiff's official capacity claims.    "A suit against a government official in his or her official capacity is another way of pleading an action against an entity of which an officer is an agent."    *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)).    Put differently, "the real party in interest in an official-capacity suit is the governmental entity and not the named official."    *Baker*, 501 F.3d at 925 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

In this case, therefore, Plaintiff's official capacity claim against Defendant Roberts is a claim against Union County.    Section 1983 liability for a constitutional violation "may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."    *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)).    But "absent a constitutional violation by a county employee, there can be no § 1983 or *Monell* liability for the county."    *Jones*, 131 F.4th at 876 (quoting *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018)).

For the reasons described above, with respect to Plaintiff's claims, the undisputed material facts show that UCDC jail officials did not violate Plaintiff's constitutional rights.    Put differently, jail officials' failure to separate inmates pending state charges from inmates who, like himself, are in custody pending federal charges does not give rise to a constitutional violation (claim one).

14

Further, the undisputed facts show that jail officials' decision to treat Plaintiff for his injuries following the April 8, 2024, assault at the UCDC rather than transport him to the hospital does not constitute deliberate indifference to an objectively serious medical condition (claim two). Because Plaintiff has not established that a county employee violated his constitutional rights any claim against the county therefore necessarily fails, as well.   Accordingly, Defendant Roberts is also entitled to summary judgment with respect to Plaintiff's official capacity claims.

### V. CONCLUSION

For the reasons and upon the authorities discussed above, Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED** and that this case is **DISMISSED WITH PREJUDICE**.

DATED this 24th day of July 2025.

*/s/ Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE